UNITED STATE.S DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KIMBERLY McCLURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 22-0624 (FYP) |
| v. | ) | (ECF) |
| | ) | |
| ANTONY BLINKEN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Antony Blinken, in his official capacity only as Secretary of State ("Defendant"), by and through undersigned counsel, respectfully submits this Reply to the Opposition filed by Kimberly McClure ("Plaintiff") to Defendant's Motion to Dismiss.

Plaintiff, an African American Foreign Service Officer ("FSO") formerly stationed in Cape Town, South Africa, alleges two counts of unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). *See generally* ECF No. 13 ("Pl's Am. Comp."). Specifically, Plaintiff alleges discrimination and hostile work environment on the basis of race. *Id*. at 12-13, ¶¶ 92-100. Plaintiff alleges that Consul General, Virginia Blaser, became her second-level supervisor "[beginning in August, 2017," and "almost immediately" "began to marginalize black employees including Plaintiff, limiting their professional opportunities, and diminishing their accomplishments." *Id*. at ¶¶ 26-27. For example, Plaintiff alleges that "[d]uring her first week, Ms. Blaser removed Plaintiff from weekly senior staff meetings." *Id*. ¶ 45. Furthermore, Plaintiff generally alleges that Blaser made disparaging remarks about third parties and gave white employees preferential treatment.

1

Notwithstanding these alleged discreet events that took place in the summer of 2017 ("winter" in South Africa), "Plaintiff made her initial report of EEO violations to the Office of Civil Rights on June 22, 2018." Pl's Am. Comp. at ¶ 9. An employee must initiate the administrative complaint process by alerting a counselor of the alleged discrimination within 45 days of the alleged discriminatory action. *See* ECF No. 15 at 6 ("Def's Memo.") (citing 29 C.F.R. § 1614.105(a); *Niskey v. Kelly*, 859 F.3d 1, 5-6 (D.C. Cir. 2017)). Thus, Plaintiff may not bring any claims in this action that arose before May 8, 2018. It appears that Plaintiff's tenure in Cape Town, South Africa ended in October 2018. *See* Pl's Am. Comp. ¶ 15. Thus, any actionable allegations that Plaintiff purports to make would have had to occur during the four month period between June and October 2018. Although it does not appear to be an actionable personnel action, the only allegation that appears to have occurred within the required forty-five days is Plaintiff's allegation that "[o]n or around May 23, 2018, Ms. Blaser prepared a schedule of who would be able to serve as Acting Consul General in Summer 2018 [and] Plaintiff was not included on this list." Pl's Am. Comp. ¶ 67.

Thus, Defendant moved to dismiss on the grounds that all of Plaintiff claims were either untimely, not exhausted, or not actionable under Title VII. *See generally* Def's Memo. In her Opposition, Plaintiff distinguished cases that Defendant relied upon and argued that her "allegations cannot be described as mere 'workplace slights.' Ms. Blaser excluded Ms. McClure from meetings, delayed her career promotion, created a racially charged working environment, and treated her different from her white peers." ECF No. 16 at 4-8 ("Pl's Opp'n"). Plaintiff also argued that Defendant discriminated against her by "den[ying] [her] the opportunity to serve as Acting Consul General for a full week while allowing white employees

2

the same, career-enhancing position." This denial, she states constitutes an adverse action. *Id*. at 8-11. In doing so, Plaintiff conceded and waived the remaining allegations in her Amended Complaint regarding claims that accrued prior her initial EEO contact, leaving this single remaining discrimination claim she makes in her Opposition. This Court's LCvR 7(b) is understood to mean that when a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded. *See Wannall v. Honeywell, Inc*., 775 F.3d 425, 428 (D.C. Cir. 2014).

Plaintiff argues that "[j]ust as a job transfer affects the terms and conditions of one's employment, so does a refusal to allow an employee to work in an upgraded position for a full week." *See* Pl's Opp'n at 8 (citing *Chambers v. D.C.*, 35 F.4d 870, 874 (D.C. Cir. 2022) ("[T]he transfer of an employee to a new role, unit, or location . . . undoubtedly is included" in the phrase "terms, conditions, or privileges of employment.")). But even in *Chambers*, upon which Plaintiff relies heavily, the D.C. Circuit recognized the principle that a "plaintiff must allege more than *de minimis* harm because the principle *de minimis non curat lex* – the law is not concerned with trifles – is assumed to be incorporated in every statute." *Id*. at 875 (citing *Wisc. Dep't of Revenue v. William Wrigley, Jr., Co*., 505 U.S. 214, 231 (1992).

The federal sector provisions of Title VII provide that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination[.]" 42 U.S.C. § 2000e-16(a). The Civil Service Reform Act defines "personnel actions" to include an appointment, promotion, disciplinary action, transfer or reassignment, reinstatement, decision concerning pay, benefits, or awards. 5 U.S.C. § 2302(a)(2)(A)(i)–(xi). This definition includes other, unenumerated "change[s] in duties, responsibilities, or working conditions" only if they

are "significant." *Id*. The Supreme Court in *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 (2020), agreed that the Civil Service Reform Act's definition of "personnel action" was "consistent with the term's meaning in general usage," and assumed it had the same meaning for purposes of the federal-sector provisions of the Age Discrimination in Employment Act ("ADEA"), which parallel those of Title VII. Compare 29 U.S.C. § 633a(a) (ADEA), with 42 U.S.C. § 2000e-16(a) (Title VII).

Importantly, the D.C. Circuit's recent *en banc* decision in *Chambers*, 35 F.4th at 882 (D.C. Cir. June 3, 2022), overruled its prior foundational rule set forth in *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999), that an adverse action must have produced an "objectively tangible harm" to be subject to Title VII's anti-discrimination provisions. In overruling *Brown*, the *Chambers* court left open the question of whether Title VII's adverse action requirement includes an overarching "*de minimis* harm" exception. *Chambers*, 35 F.4th at 875. In so doing, the court noted that "the principle *de minimis non curat lex*—the law is not concerned with trifles—is assumed to be incorporated in every statute, absent an indication to the contrary[.]" *Id*. The court in *Chambers* did not identify any indication in Title VII that *de minimis* harms are actionable. *See Chambers*, 35 F.4th at 882-86 (Walker, J., concurring in the judgment in part). Putting these elements together, for federal sector purposes, a plaintiff satisfies the first element of her prima facie case by establishing that she suffered a final, adverse "personnel action" as defined by 5 U.S.C. § 2302(a)(2)(A) that is beyond trivial.

The D.C. Circuit has explained, as a matter of law, that the "denial of a temporary designation is not one of the terms, conditions, or privileges of employment contemplated by Title VII." *Brewer v. Holder*, 20 F. Supp. 3d 4, 27 (D.D.C. 2013) (quoting *Stewart v. Evans*,

275 F.3d 1126, 1135 (D.C. Cir. 2002)); *see Taylor v. FDIC*, 132 F.3d 753, 764 (D.C. Cir. 1997)). Thus, even post-*Chambers*, a plaintiff is still required to show that an employer has discriminated with respect to the terms, conditions, or privileges of employment. *See Hartzler v. Mayorkas*, Civ. No. 20-3802, 2022 U.S. Dist. Lexis 195323 *57 (D.D.C. 2022). In this case, Plaintiff fails to allege that the denial of an acting position for "one week," affected the terms, conditions, or privileges of employment contemplated by Title VII. *See* Pl's Opp'n ("Defendant denied [Plaintiff] the opportunity to serve as Acting Consul General *for a full week* [emphasis added].)

Plaintiff's purported hostile work environment claim also fails because "a plaintiff asserting a claim based on a hostile work environment faces a high hurdle." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016). To prove a hostile work environment, a plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). "In determining whether a hostile work environment claim exists, courts look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *AMTRAK v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris*, 510 U.S. at 23). This standard ensures that "Title VII does not become a general civility code," requiring the courts to "polic[e] the ordinary tribulations of the workplace." *Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 80 (D.D.C. 2012).

5

As an initial matter, Plaintiff has failed to exhaust many of these discrete allegedly hostile acts that were directed against mostly thirty parties. The bulk of Plaintiff's allegedly hostile acts were comments made about the former Cape Town Consul General, *see* Pl's Am. Comp. at 4 ¶ 30 ("Ms. Blaser spoke disparagingly of Consul General Taylor and referred to him as having a 'cabal' favoring other black employees."), and Blaser's counterpart in Durban, Sheryl Sykes ("Ms. Blaser told consulate staff in Cape Town that Ms. Sykes spoke horribly, and that staff should not speak like her."). *See id*. ¶ 33. It appears that most of these incidents took place shortly after Blazer's posting to Cape Town, which would have been significantly before Plaintiff made initial EEO contact. *Id.* Thus, she cannot cure her failure to timely exhaust his complaints about these incidents by sweeping them under the rubric of a hostile work environment claim. *See Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141,164 (D.D.C. 2013). A plaintiff must demonstrate that the time-barred incidents are "adequately linked" with the exhausted incidents "into a coherent hostile work environment claim." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011). Only one of Plaintiff's discrimination claims appears to have been properly exhausted even if it is not actionable.

Finally, even if Plaintiff did exhaust her hostile work environment claim, the allegations, while unfortunate and mostly directed to and about third parties, appear to fall into the category of the ordinary tribulations of the workplace that courtvs are reticent to police. The Supreme Court established a test for whether the alleged conduct is "sufficiently severe or pervasive." *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 579 (D.C. Cir. 2013) (*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). In his concurring opinion in *Ayissi*, then-Judge Kavanaugh found the one-time use of a racial "epithet [that] has been labeled, variously, a term that 'sums

6

up . . . all the bitter years of insult and struggle in America' directed toward African American was sufficiently "severe."  *Ayissi-Etoh*, 712 F.3d at 580.

Plaintiff has not alleged any facts that are as severe as the foregoing or pervasive.  It is well-established that Title VII's hostile work environment standard is "demanding."  *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 78 (D.D.C. 2013); *Beshir v. Jewell*, 961 F. Supp. 2d 114, 128 (D.D.C. 2013) (facts were insufficient to establish a hostile work environment where employee was yelled at on a daily basis causing her to seek medical attention, was subjected to aggressive pressure to violate federal regulations, was threatened with career setbacks, and was accused of threatening her supervisor and suspended); *Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) (a hostile work environment was not sufficiently established even though the "employee and his immediate supervisor repeatedly butted heads," "the supervisor frequently yelled at [the employee] during discussions about his work," and "the supervisor threatened [the employee] with job-related consequences for his refusals to meet workplace expectations"); *Dudley*, 924 F. Supp. 2d at 171 (discussing "[a] litany of cases show[ing] that simply having a rude, harsh, or unfair boss is not enough for a hostile work environment claim"); *Singh v. U.S. House of Reps.*, 300 F. Supp. 2d 48, 56-57 (D.D.C. 2004) ("It is clear beyond cavil that criticisms of a subordinate's work and expressions of disapproval (even loud expressions of disapproval) are the kinds of normal strains that can occur in any office setting").  Here, the alleges hostile acts Plaintiff alleges, similarly, were not frequent, severe, or offensive enough to qualify as a hostile work environment.

Thus, for the foregoing reasons and Defendant's arguments elsewhere in the record, Plaintiff's Amended Complaint should be dismissed in its entirety.

October 31, 2022                                Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:       /s/
KENNETH ADEBONOJO
Assistant United States Attorney
United States Attorney's Office-DC
601 D Street, N.W. – Civil Division
Washington, D.C.   20530
Telephone: (202) 252-2562