UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIMBERLY McCLURE,<br><br>   *Plaintiff*,<br><br>  v.<br><br>ANTONY J. BLINKEN,<br>Secretary, U.S. Department of State,<br><br>   *Defendant*. | Civil Action No. 1:22-cv-624 (ACR) |

**MEMORANDUM OPINION & ORDER**

  Plaintiff Kimberly McClure ("Plaintiff"), a Black woman employed by the United States Department of State ("State Department"), sues for race discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964. Defendant Antony J. Blinken ("Defendant"), sued in his official capacity, has moved to dismiss for failure to state a claim. Dkt. 15. For the reasons below, the Court grants Defendant's motion and dismisses the case without prejudice.

**I. BACKGROUND**

 **A. Factual Background**

  The Court accepts as true the following well-pled allegations and draws all reasonable inferences from them in Plaintiff's favor. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

  Plaintiff is employed by the State Department and currently works in Washington, D.C. Dkt. 13 ¶ 15. From October 6, 2015, to October 7, 2018, she served as an Assistant Public Diplomacy Officer (FS-02 rank) at the U.S. Consulate in Cape Town, South Africa. *Id*. ¶¶ 20, 22, 77. In August 2017, Virginia Blaser, a White woman, became the Consulate's Consul

1

General and Plaintiff's second-line supervisor. *Id.* ¶¶ 3, 26. Plaintiff alleges that Blaser "marginalize[d] black employees including Plaintiff, limit[ed] their professional opportunities, and diminish[ed] their accomplishments." *Id.* ¶ 27.

To start, on her arrival, Blaser disinvited Plaintiff from weekly senior staff meetings that she had previously attended. *Id.* ¶¶ 45–46. That same year, Blaser discouraged Plaintiff's supervisor from nominating her for an award because she covered roles only in an acting capacity. *Id.* ¶¶ 38–41, 42; Dkt. 15-2 at 2. But Blaser gave an award to a White officer who covered a role only in an acting capacity. Dkt. 13 ¶ 42. While Plaintiff received an award after she left Cape Town, the timing diminished its "effect and prestige." Dkt. 13 ¶ 44.

In April 2018, Blaser participated in Plaintiff's employee evaluation. *Id.* ¶ 57. In the evaluation, Blaser "did not include a substantive assessment of Plaintiff's most notable accomplishments, including that she had covered three jobs, serving as Acting [Consul General,] Public Affairs Officer (PAO), and her own position." *Id.* ¶ 59. If identified, these accomplishments would have stood out to a promotion board and increased Plaintiff's odds of promotion. *Id.* Blaser stated that she did not assess these actions because they occurred prior to her arrival even though she assessed prior work performed by a White employee. *Id.* ¶¶ 60–61. Blaser also did not recommend Plaintiff for a promotion, which contributed to her not being promoted. *Id.* ¶¶ 62, 64–65.

On May 14, 2018, Blaser denied Plaintiff's request to lead a brainstorming session with all consulate employees. Dkt. 15-2 at 2. She instead appointed two White officers, who had spent less time in the Consulate than Plaintiff, to lead the session. Dkt. 13 ¶¶ 47–50. She also did not select Plaintiff "to lead and organize a mission-wide National Day Celebration" or "to

2

lead the post's Mandela Day. *Id.* ¶¶ 51–52. Again, she instead selected White employees to handle these tasks. *Id.*

Later in May, Blaser did not designate Plaintiff as eligible to serve as Acting Consul General for one week. *Id.* ¶ 67. That omission prevented Plaintiff from serving in that role in 2018, which in turn cost her the opportunity to "interact with high-ranking officials," and "show her leadership skill." *Id.* ¶¶ 79–80. Plaintiff alleges that every White officer at FS-02 rank served as Acting Consul General for one week in 2018, but none of the three FS-02 Black officers did.[1] *Id.* ¶ 68. Blaser told Plaintiff that she was not selected to serve as Acting Consul General because she had served in that position for three weeks in July 2017, yet other White employees served as Acting Consul General more than once. *Id.* ¶¶ 24–25, 72–73. Blaser did designate Plaintiff as eligible to serve as Acting Deputy Post Officer, but that post was "less competitive for promotion purposes." *Id.* ¶ 70.

Plaintiff also alleges that Blaser mistreated, insulted, and mocked other Black employees, including Blaser's predecessor. *Id.* ¶ 29. Blaser also allegedly claimed that her predecessor had "a 'cabal' favoring other black employees and inappropriately favored and elevated black employees." *Id.* ¶¶ 30–31. She also allegedly remarked that her "black employees are [her] worst performers." *Id.* ¶ 37. Plaintiff does not allege that Blaser made any of these comments in her presence. *Id.* ¶¶ 29–33, 37.

## B. Procedural Background

Plaintiff made her initial report of Equal Employment Opportunity ("EEO") violations to the State Department's Office of Civil Rights ("OCR") on June 22, 2018. *Id.* ¶ 9. She requested

---

[1] Blaser selected one Black officer to serve as Acting Consul General for one weekend day. Dkt. 13 ¶ 76. Plaintiff dismisses this as a "null" opportunity. *Id.*

informal EEO counseling on July 6, 2018, and filed an EEO complaint on August 14, 2018. *Id*. On October 19, 2018, OCR accepted the following race discrimination allegations for investigation: (1) "Your performance evaluation for the period ending April 2018 did not contain salient accomplishments or a recommendation for promotion"; (2) "On May 14, 2018, you were denied the opportunity to organize a brainstorming session"; (3) "On June 21, 2018, you learned you were excluded from an opportunity to act as Consul General in Cape Town, South Africa"; and (4) "You were subjected to a hostile work environment characterized by, but not limited to unfair work assignments, denigrating comments, and denial of professional opportunities." Dkt. 15-3 at 1–2. OCR dismissed as untimely Plaintiff's allegation that Blaser discouraged her nomination for an award. *Id.* at 5–7. Following the completion of an investigation into Plaintiff's formal EEO complaint, an Equal Employment Opportunity Commission Administrative Judge dismissed Plaintiff's case on November 1, 2021. Dkt. 13 ¶ 10–11.

Plaintiff filed a Complaint in this Court on March 7, 2022. Dkt. 1. On July 15, 2022, Defendant filed a Motion to Dismiss. Dkt. 11. In response, Plaintiff filed an Amended Complaint on August 4, 2022. Dkt. 13. Defendant now moves to dismiss the suit. Dkt. 15.

## II.  LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the motion, the Court accepts as true plaintiff's factual allegations and

"grant[s] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow*, 216 F.3d at 1113.

### III.  ANALYSIS

**A.  Race Discrimination (Count I)**

   1. *Timely Exhaustion of Administrative Remedies*

Defendant argues that Plaintiff did not timely exhaust her administrative remedies for most of the alleged incidents.  Federal employees alleging discrimination in violation of Title VII must exhaust administrative remedies before suing in federal court.  *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).  To do so, they "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see also Weber v. Battista*, 494 F.3d 179, 182–83 (D.C. Cir. 2007).  This 45-day limit may be extended if the employee shows that he or she "did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred...." 29 C.F.R. § 1614.105(a)(2).

Defendant does not help its cause by providing inconsistent arguments about what date the 45-day limit began and which allegations are time-barred.[2]  In its analysis, the Court uses the dates in Plaintiff's Amended Complaint and the official State Department and EEO documents.[3] Plaintiff alleges that she made her initial report to OCR on June 22, 2018, Dkt. 13 ¶ 9; she is thus

---

[2] Defendant contends in its opening brief that the 45-day clock starts backwards from July 6, 2018; however, in its reply, Defendant states that the relevant date is June 22, 2018. *See* Dkt. 15 at 13; Dkt. 20 at 2.  Defendant therefore offers contradictory positions of whether two specific events are time-barred: (1) Plaintiff's exclusion from the list of employees to serve as Acting Consul General and (2) Blaser's denial of Plaintiff's request to lead a brainstorming session.  *See* Dkt. 15 at 15–17; Dkt. 20 at 2.

[3] The Court takes judicial notice of the official State Department and EEO documents referenced in Plaintiff's Amended Complaint and attached to Defendant's Motion to Dismiss.  *See* Dkt. 13 ¶¶ 9–15; Dkt. 15; *Spence v. Wolf*, 2020 WL 6075727, at *3 (D.D.C. Oct. 15, 2020).

time-barred from making a discrimination claim based on any event that occurred before May 8, 2018.[4]  The following alleged acts of discrimination therefore fail as untimely: (1) Blaser recommended that Plaintiff not receive an award (October 2017); (2) Blaser excluded Plaintiff from senior staff weekly meetings (October 2017); and (3) Blaser submitted an incomplete employee evaluation (April 2018).  For good reason, Plaintiff does not claim otherwise in her opposition.

 2. *Discrimination Analysis*

Plaintiff does bring two timely allegations: (1) Blaser denied Plaintiff's request to lead a brainstorming session (May 14, 2018); and (2) Blaser did not include Plaintiff on the list of employees eligible to serve as Acting Consul General for one week (May 23, 2018).  Dkt. 13 ¶¶ 47–50, 67.

As to these claims, Defendant argues that Plaintiff has not stated a plausible claim to relief.  To establish a *prima facie* case of discrimination, a plaintiff must show that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quotations omitted); *see also McCallum v. Mayorkas*, 2023 WL 3203011, at *9 (D.D.C. May 2, 2023).  While a plaintiff need not plead each element of a *prima facie* case of discrimination to survive a motion to dismiss, a plaintiff must nevertheless plead sufficient facts to support such a claim.  *See Sparrow*, 216 F.3d at 1114; *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011).

---

[4] The Court assumes—without deciding—that Plaintiff's initial report to OCR qualifies as "initiat[ing] contact with a[n] [EEO] Counselor" under 29 C.F.R. § 1614.105(a)(1).  Defendant concedes as much in its reply brief.  Dkt. 20 at 2.

6

Plaintiff's first claim is easy to address. Blaser's decision to have someone other than Plaintiff lead a brainstorming session was not an actionable adverse employment action. Such a decision "fall[s] into the category of a supervisor's ordinary workplace exercise of authority that did not adversely affect the conditions of plaintiff's employment." *Heavans v. Dodaro*, 2022 WL 17904237, at *8 (D.D.C. Dec. 23, 2022). Plaintiff does not contend otherwise.

The second claim fails for the same reason—Blaser's decision not to permit Plaintiff to serve as Acting Consul General is not an actionable adverse employment action. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011); *see also Heavans*, 2022 WL 17904237, at *7.

To find an adverse employment action, the D.C. Circuit, until recently, required courts to conclude that "a reasonable trier of fact could find objectively tangible harm" based on "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). In *Chambers v. District of Columbia*, the D.C. Circuit invalidated that rule and held instead that an adverse employment action can exist despite a lack of "objectively tangible harm" like economic impact. 35 F.4th 870, 874–75 (D.C. Cir. 2022) (en banc) (addressing an employee's forced transfer or denial of a transfer request).

Yet "[e]ven post-*Chambers*, [a] plaintiff cannot avoid dismissal of her Title VII discrimination claim by baldly stating that the alleged employment action adversely affected the terms, conditions, or privileges of employment without proffering supporting facts or allegations." *Black v. Guzman*, 2023 WL 3055427, at *8 (D.D.C. Apr. 24, 2023). Plaintiff

7

provides no supporting facts or allegations that Blaser's decision not to permit Plaintiff to serve as Acting Consul General for one week affected the "terms, conditions, or privileges" of her employment. *Id.* Nor could she. The "denial of a temporary designation is not one of the terms, conditions, or privileges of employment contemplated by Title VII." *Brewer v. Holder*, 20 F. Supp. 3d 4, 27 (D.D.C. 2013), *amended in part*, 2013 WL 12399112 (D.D.C. Dec. 16, 2013). "Therefore, denial of an acting position—without showing some further harm—does not by itself qualify as an adverse employment action." *Id.* (cleaned up).

Plaintiff's reliance on *Liu v. Georgetown University* is inapposite. *See Liu v. Georgetown Univ.*, 2022 WL 2452611 (D.D.C. July 6, 2022). In *Liu*, the court held that "to present and to take professional credit for one's own work constitutes a 'privilege' of employment as an academic researcher." *Liu*, 2022 WL 2452611, at *6 (cleaned up). The court based its conclusion in part on the definition of "privilege," which is "a right or immunity granted as a peculiar benefit, advantage, or favor, *especially*: such a right or immunity attached specifically to a position or an office." *Id.* (quoting Privilege, Merriam-Webster, https://www.merriam-webster.com/dictionary/privilege (last visited July 11, 2022)). Here, Plaintiff claims that the opportunity would have afforded her the "ability to interact with high-ranking officials," Dkt. 13 ¶ 79, and "show her leadership skills," *id.* ¶ 80. The Court accepts this as true for present purposes. But Plaintiff does not allege—nor could she—that the opportunity to serve as Acting Consul General for one week is a "privilege" or "right" of her employment as a foreign service officer. Indeed, the fact that one had to be designated by a superior as eligible for the post before being considered indicates the opposite.

Plaintiff also cites *Holcomb v. Powell* for the proposition that "an extraordinary reduction in responsibilities that persisted for years" constitutes an adverse action. Dkt. 16 at 9 (citing

*Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006)). But Plaintiff does not allege that the denial of an opportunity to serve as Acting Consul General for one week reduced her responsibilities.[5] Even if she had made the allegation, that reduction was not ongoing "for years," given that she served in the role in 2017 and left the consulate in late 2018.

For these reasons, the Court grants Defendant's Motion to Dismiss Plaintiff's claim of race discrimination.

### B.   Hostile Work Environment (Count II)

Defendant also moves to dismiss Plaintiff's hostile work environment claim for failure to state a claim. *See* Dkt. 15 at 23–26. To establish a *prima facie* case of hostile work environment, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment occurred because of her race . . . ; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it." *Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 77 (D.D.C. 2005), *aff'd,* 187 F. App'x. 1 (D.C. Cir. 2006). While a plaintiff need not plead each element of a *prima facie* case of hostile work environment to survive a motion to dismiss, a plaintiff must nevertheless plead sufficient facts to support such a claim. *See Sparrow*, 216 F.3d at 1114; *Hoskins v. Howard Univ.,* 839 F. Supp. 2d 268, 277 (D.D.C. 2012).

"To prevail on a hostile work environment claim, a plaintiff must show that [her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

---

[5] Plaintiff does argue this in her Opposition. Dkt. 16 at 10. But she makes no such allegation in her Amended Complaint. A plaintiff cannot amend her complaint through her opposition to a motion to dismiss. *See Perkins v. Vance-Cooks,* 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012).

9

working environment." *Baird v. Gotbaum*, 662 F.3d at 1250 (internal quotation marks omitted). "'[C]onduct must be extreme to amount to a change in the terms and conditions of employment.' For example, 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory [or retaliatory] conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008); *see also Dudley v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 152 (D.D.C. 2013). "[O]rdinary tribulations of the workplace" do not create a hostile work environment. *Faragher*, 524 U.S. at 788 (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)).

Plaintiff alleges "ordinary tribulations" that mirror claims that courts in this district have held are insufficient.[6] Plaintiff primarily claims that Blaser did not afford her certain professional opportunities. As discussed above, Blaser removed Plaintiff from weekly senior staff meetings, denied Plaintiff's request to lead a "brainstorming session," and did not choose Plaintiff to serve as Acting Consul General for a week-long period. Dkt. 13 ¶¶ 49–50, 67. Each time, Blaser gave White co-workers those same professional opportunities. *Id.* ¶¶ 49, 68. Blaser also did not include certain relevant experience in Plaintiff's performance evaluation, did not

---

[6] The Court need not resolve which of Plaintiff's allegations are time-barred on this claim. Even if Plaintiff's time-barred allegations "occurring outside the statutory period are *sufficiently related* to those incidents occurring within the statutory period as to form one continuous hostile work environment," the claim still fails. *See Baird*, 662 F.3d at 1251 (cleaned up).

10

explicitly recommend her for a promotion, and discouraged another staff member from nominating her for an award.  *Id.* ¶¶ 60, 64, 39.

Although these issues may indicate a fraught workplace, "[o]ccasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment." *Bell v. Gonzales,* 398 F. Supp. 2d 78, 92 (D.D.C. 2005); *see also Horsey v. United States Dep't of State*, 387 F. Supp. 3d 97, 111 (D.D.C. 2019), *aff'd*, 805 F. App'x 10 (D.C. Cir. 2020).  For example, "non-selection for a desirable position" or "the removal of important assignments [and] lowered performance evaluations" do not establish a hostile work environment.  *Brooks v. Grundmann*, 851 F. Supp. 2d 1, 6–7 (D.D.C. 2012), *aff'd*, 748 F.3d 1273 (D.C. Cir. 2014); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 93–94 (D.D.C. 2009) (citing *Bell*, 398 F. Supp. 2d at 92).  Indeed, "courts have generally rejected hostile work environment claims that are based on work-related actions by supervisors." *Grosdidier v. Chairman, Broad. Bd. of Governors,* 774 F. Supp. 2d 76, 110–11 (D.D.C. 2011). That is so because "[a]llegations of undesirable job assignment or modified job functions and of [a supervisor's] unprofessional and offensive treatment are not sufficient to establish that [the plaintiff's] work environment was permeated with discriminatory intimidation, ridicule, and insult." *Houston v. SecTek, Inc.*, 680 F. Supp. 2d 215, 225 (D.D.C. 2010) (cleaned up), *aff'd*, 407 F. App'x 490 (D.C. Cir. 2011).  Same too for "the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management." *Nurriddin,* 674 F. Supp. 2d at 94.

Thus, this court has held, in a case with more egregious facts than this one, that exclusion from the informal chain of command, close monitoring of work, missed opportunities for teaching, travel, and high-profile assignments, and reassignment to another unit did not amount

11

to a hostile work environment because "they cannot fairly be labeled abusive or offensive." *Bell,* 398 F. Supp. 2d at 92; *see also Rene v. Granholm*, 2022 WL 17820342, at *7 (D.D.C. Dec. 20, 2022) (finding that plaintiff's allegations of a lack of training, mentoring, and favorable work opportunities "do not meet the high bar required of hostile-environment claims."); *Routier v. Ross*, 2018 WL 5251743, at *4 (D.D.C. Oct. 22, 2018) (finding that plaintiff's allegations that his supervisor criticized his poor performance, failed to give him an award, and gave him poor ratings in performance evaluations is "par for the course in a typical workplace and, as such, is insufficient to constitute a hostile work environment"). Plaintiff's allegations of Blaser's unprofessional supervision therefore do not show that Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult sufficient to create an abusive working environment.

Although Plaintiff alleges that Blaser made racist comments about other Black employees, Plaintiff does not allege Blaser made these comments in her presence or that they were directed to her. "Comments made outside of the employee's presence are generally not actionable as the basis for a hostile work environment claim." *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 91 (D.D.C. 2013); *see also Stewart v. Fed. Commc'ns Comm'n*, 177 F. Supp. 3d 158, 168 (D.D.C.), *modified on reconsideration*, 189 F. Supp. 3d 170 (D.D.C. 2016) (explaining that "conduct directed at others is considered less hostile"). Although "second-hand gossip may be . . . unpleasant to hear, [ ] it lacks the severity or pervasiveness necessary to affect the terms or conditions of employment and to give rise to an environment that is subjectively and objectively hostile." *Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 117 (D.D.C. 2015); *see also Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005), *aff'd sub nom. Nurriddin v. Griffin*, 222 F. App'x 5 (D.C. Cir. 2007).

Plaintiff falls far short of alleging conduct that amounts to "intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).

For these reasons, the Court grants Defendant's Motion to Dismiss Plaintiff's claim of a hostile work environment.

### IV.  CONCLUSION AND ORDER

It is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 15) is GRANTED. Plaintiff's Amended Complaint is DISMISSED without prejudice.

This is a final appealable Order.  *See* Fed. R. App. P. 4(a).


Date: July 13, 2023

_____
ANA C. REYES
United States District Judge